```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JUANA ORTIZ, on behalf of herself and all                   :
others similarly-situated,                                  :
                                           Plaintiff,       :      17 Civ. 4560 (LGS)
                         -against-                          :
                                                            :      OPINION AND ORDER
HF MANAGEMENT SERVICES, LLC, d/b/a                          :
HEALTHFIRST,                                                :
                                           Defendant.       :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/21/2017

LORNA G. SCHOFIELD, District Judge:

Named Plaintiff Juana Ortiz, on behalf of herself and others similarly situated, sues Defendant HF Management Services ("Defendant" or "Healthfirst") for alleged violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendant moves to dismiss the Second Amended Complaint (the "Complaint") based on Named Plaintiff's alleged failure to comply with this Court's December 9, 2016, Order granting leave to amend the Amended Complaint under specific conditions. Named Plaintiff opposes the motion. Defendant's motion is granted and the Complaint is dismissed.[1]

## I.    BACKGROUND

### A.  Procedural History Preceding This Action

Kanwarpreet Thind initiated this putative collective and class action on December 3, 2014. He filed the First Amended Complaint on February 20, 2015 (the "FAC"). The FAC alleged that Thind worked for Healthfirst as a Facilitated Enroller ("FE") from August 24, 2009, to January 24, 2012, and as a Manager for Sales ("Manager") from January 25, 2012, to August

---

[1] Named Plaintiff also cross-moves to amend the Second Amended Complaint. That motion is not addressed in this Opinion and will be resolved by a separate order.

21, 2014.  The FAC alleged six causes of action based on violations of FLSA and NYLL.  In an Opinion and Order dated July 29, 2015, the Court dismissed the FAC's causes of action based on Healthfirst's alleged failure to pay the minimum wage and to pay wages in accordance with the agreed terms of employment under NYLL.

On July 31, 2015, the Court granted Thind's motion for conditional certification of two FLSA collectives -- Collective A and Collective B -- as to the FAC's FLSA overtime claim only.  Collective A included all current and former Healthfirst employees who worked as managers in the Facilitated Enrollment Department in the three years before the filing of the initial complaint and who did not receive overtime pay.  Collective B included all current and former Healthfirst employees who worked as FEs in the three years before the filing of the initial complaint and who did not receive overtime pay.

Ortiz and others joined this litigation in the fall of 2015, after receiving notice of the *Thind* collective action.  On January 5, 2016, as an opt-in plaintiff, Ortiz responded to Defendant's First Set of Interrogatories, stating that she "does not recall specific dates, days, or hours worked," and that Mildres Ramos was the only Healthfirst Manager who directed Ortiz to work off-the-clock.

On May 12, 2016, Defendant moved to decertify Collective B, arguing that Thind and the Opt-In Plaintiffs were not similarly situated.  Thind opposed the decertification motion, cross-moved for leave to file what now is the operative pleading and for final certification of a redefined Collective B consisting of Collective B1 and Collective B2.  Proposed Collective B1 included all current and former Healthfirst employees who worked as FEs, worked off-the-clock with *express* instruction from managers and did not receive overtime pay.  Proposed Collective

B2 included all current and former Healthfirst employees who worked as FEs, worked off-the-clock *without* express instruction from managers and did not receive overtime pay.

In an Opinion and Order dated December 9, 2016 (the "December 9 Opinion"), the Court decertified Collective B, holding that "Thind cannot demonstrate that Healthfirst employed a single, uniform policy of explicitly directing Facilitated Enrollers to work off the clock in violation of its clear written policy." The Court identified "two discrete groups" of Collective B opt-in plaintiffs -- "those who were explicitly told to work off the clock and those who were not." Based on this observation, the Court granted in part Thind's cross-motion for leave to amend, allowing him to file an amended complaint replacing Collective B with the above-described Collective B1 -- FEs who received express instructions to work off-the-clock. The Court denied Thind's motion to amend with respect to Collective B2, explaining that "to prove a violation [of FLSA], the B2 plaintiffs would need to establish that Healthfirst had 'actual or constructive knowledge' that they were working without pay," which would require individualized inquiry. Each of the B2 plaintiffs also would need to show individually the circumstances that gave rise to his or her understanding that he or she had been directed, implicitly, to work overtime without pay. The December 9 Opinion stated, "Plaintiff may file a Second Amended Complaint that is consistent with this Opinion and the information that has come out in discovery . . . ." In other words, as relevant here, the B1 Collective would need to consist of FEs whom Defendant expressly instructed to work off-the-clock and would require a lead plaintiff who, according to previously filed discovery responses, had received express instructions to work overtime without pay.

3

Since the December 9 Opinion, the claims on behalf of Collectives A and B1 have proceeded as separate actions, with Thind continuing to represent Collective A on behalf of managers in *Thind v. Healthfirst, Inc., et al.*, No. 14 Civ. 9539.

### B. **This Action and Plaintiff Ortiz**

After the claims on behalf of Collective B1 were severed from the *Thind* action, Ortiz was named lead plaintiff in this new action on June 16, 2017. The Complaint (*i.e.*, the Second Amended Complaint) asserted claims on behalf of Ortiz and a collective defined in relevant part as FEs who "worked off-the-clock hours to meet Defendant's productivity requirement with instruction from managers." Sixteen opt-in plaintiffs have consented to join this action.

The Complaint alleges that Ortiz was employed by Healthfirst as a FE from March 9, 2007, to January 22, 2013, and that, during her employment, she regularly worked from 8:30 a.m. to 6:30 p.m., Monday through Friday, every week, and often for four hours on Saturday. The Complaint further alleges that she was compensated at her regular rate of pay for most hours worked, except most of those in excess of forty hours per week, which were "off-the-clock." The Complaint also alleges that Ortiz was told that there was "no budget for her to work overtime," and she was paid overtime compensation only during weeks when she met certain performance goals.

The Complaint alleges that Ortiz worked these "excess hours in order to meet Defendant's weekly productivity requirement." The Complaint further alleges that "[a]t all times, Defendant was aware of Plaintiff's off-the-clock work, as all Facilitated Enrollers were required to communicate with their managers and advise them of their daily schedules, progress towards meeting their productivity requirements and hours worked." The Complaint does not allege that any manager expressly instructed Ortiz to work off-the-clock.

On July 14, 2017, Defendant moved to dismiss the Complaint, arguing (1) that the Complaint fails to allege that FEs were expressly told to work off-the-clock; (2) that Ortiz is not a member of a properly defined B1 collective because (a) the Complaint fails to allege that Ortiz was expressly told to work off-the-clock, (b) the only employee she had identified as directing her to work off-the-clock left Heathfirst's employment more than six years before she joined this case (*i.e.*, beyond the period for which she could bring timely claims) and (c) the example of unpaid work pertains to a week when she was not working as a FE; and (3) that her allegations are inconsistent with her prior interrogatory responses -- all in contravention of the December 9 Opinion's conditions for an amended complaint.

On July 28, 2017, Oritz attempted to file a third amended complaint, which was struck from the record because she had not obtained leave to file it or Defendant's consent pursuant to Fed. R. Civ. P. 15.  On August 8, 2017, Ortiz filed an opposition to the motion to dismiss, challenging Defendant's arguments as "hypertechnical," and in the alternative, requesting leave to file an amended complaint.

With her opposition to the motion to dismiss, Ortiz filed amended responses to Defendant's First Set of Interrogatories, in which she stated that she worked "from on or about December 2, 2012 to December 8, 2012 . . . [for] approximately 55 hours without compensation for all the overtime she worked during that week."  She also amended her responses to include the names of two additional managers who told her to work off-the-clock, and two additional managers to whom she reported.

Ortiz also filed with her opposition a proposed third amended complaint, which adds new facts to correct the deficiencies that Defendant had identified -- the proposed complaint defines the Collective, in relevant part, as FEs who "worked off-the clock hours to meet Defendant's

5

productivity requirement with *express* instruction from managers."  The proposed complaint also adds that "Plaintiff was instructed on a number of occasions that she was required to work more than her regularly scheduled hours to meet her performance goals, but that she was not eligible to be paid for her overtime hours unless she met her performance goals."  The proposed complaint also changes the dates for the example that she included in the Complaint from a week in April 2013 to a week in December 2012.

## II.   STANDARD

The Second Circuit has recognized that "[d]istrict courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012) (summary order); *see also Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044, 2013 WL 5549495, at *5 (S.D.N.Y. Oct. 8, 2013) (dismissing claims newly added to an amended complaint where those claims exceeded the scope of the court's leave).  "The power to dismiss claims that exceed a leave to amend stems from the Court's inherent authority."  *Bravo*, 2013 WL 5549495, at *5 (citing cases).

## III.   DISCUSSION

The Complaint is dismissed because it exceeds the scope of the Court's leave, as it is premised on the theory of the dismissed B2 Collective, and it alleges facts that are inconsistent with what has been disclosed in discovery.

In decertifying Collective B, the December 9 Opinion explained that the Opt-In Plaintiffs "fall into two discrete groups -- those who were explicitly told to work off the clock and those who were not."  The Opinion further explained that proposed Collective B2, which included

those Opt-Ins who "indicated that they were not expressly told to work off the clock," was not viable because its members "would need to establish that Healthfirst knew that each of them individually was working overtime without pay despite not expressly instructing them to do so." Because adjudicating the claims of Collective B2 "would require roughly seventy mini-trials," the December 9 Opinion granted leave only with respect to the claims of Collective B1.

Consistent with the theory underlying Collective B2, the Complaint alleges that Ortiz worked in excess of forty hours per week to meet Defendant's weekly productivity requirements, even though she was told that there was no budget for her to work overtime. The Complaint does not allege that any Healthfirst manager *expressly* told Ortiz to work in excess of forty hours; rather, it alleges that "[a]t all times, Defendant was aware of Plaintiff's off-the-clock work, as all Facilitated Enrollers were required to communicate with their managers and advise them of their daily schedules, progress toward meeting their productivity requirements and hours worked." The definition of the collective similarly omits the word "express" (*i.e.*, FEs who "worked off-the-clock . . . with instruction from managers"). But it was the word "express" that differentiated the viable Collective B1 from the non-viable Collective B2. As the Complaint's allegations sound in the Collective B2 theory that Healthfirst *implicitly* instructed FEs, including Ortiz, to work in excess of forty hours per week -- a theory the December 9 Opinion unequivocally rejected -- the Complaint exceeds the scope of the Court's leave. The Complaint therefore is dismissed for this reason and those stated in the December 9 Opinion.

Ortiz argues in opposition that the Complaint is consistent with the December 9 Opinion, asserting that the December 9 Opinion "provided that . . . plaintiffs would need to establish that Healthfirst had 'actual or constructive knowledge' that [FEs] were working overtime without pay." Ortiz appears to be suggesting that the Complaint comports with the December 9 Opinion

because, consistent with the quoted language, it alleges that Healthfirst was "aware" that Ortiz was working overtime without pay. Ortiz's reliance on this portion of the December 9 Opinion is misplaced. The need to make such a showing of actual or constructive knowledge as to each member of the collective was precisely the reason the Court held Collective B2 to be non-viable.

Ortiz also argues that the omission of "express" from the class and collective definitions is immaterial because the difference between "with instruction" and "at the *express* instruction" is purely semantic. That argument fails because "with instruction" fairly encompasses both explicit and implicit instruction. As the December 9 Opinion made clear, whether an opt-in plaintiff was expressly or impliedly instructed to work off-the-clock is the line between viability and non-viability. To conform the Complaint to the scope permitted in the December 9 Opinion, Plaintiff would have to amend it (again) (1) to add the word "express" to the definition of the collective to exclude those who received implicit instructions to work overtime without pay; and (2) to plead that Ortiz was expressly instructed to work overtime without pay.

The Complaint also is dismissed because it exceeds the scope of the Court's leave by pleading facts that are inconsistent with those disclosed in discovery. In her response to Defendant's First Set of Interrogatories, Ortiz stated that she "does not recall specific dates, days, or hours worked." Ortiz also stated that Mildres Ramos was the only Healthfirst manager who instructed her (Ortiz) to work off-the-clock without pay. The Complaint, on the other hand, alleges that Ortiz worked specific dates, days and hours -- 8:30 a.m. to 6:30 p.m., Monday through Friday, every week, and often for four hours on Saturday. The Complaint further alleges, albeit as an example, that Ortiz worked overtime without pay from April 22, 2013, to April 28, 2013, even though Ortiz stated that she did not recall specific dates, days or hours worked (and even though the Complaint alleges that Ortiz was a FE until January 22, 2013). The

Complaint also fails to allege that anyone told Ortiz to work off-the-clock, yet she identified Mildres Ramos as having done so in her interrogatory responses.

Because the Complaint is premised on the rejected theory of the B2 Collective and pleads facts that are inconsistent with those which have been disclosed in discovery, it exceeds the scope of the Court's leave and is dismissed. To the extent that Ortiz's belated, amended responses to Defendant's First Set of Interrogatories cure some of the defects identified in this Opinion, the Court will resolve that issue in a separate opinion and order regarding Ortiz's pending motion for leave to file the proposed third amended complaint.

## IV. CONCLUSION

Defendant's motion to dismiss the Complaint is GRANTED. The Clerk of Court is directed to close the motion at Docket No. 12.

Dated: November 21, 2017
       New York, New York

_____
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**